UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL E. GOLDSTON and ) | |
| CHARLOTTE C. GOLDSTON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:12-cv-00804 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| SUNTRUST MORTGAGE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The defendant, SunTrust Mortgage, Inc. ("SunTrust") has filed a Motion to Dismiss (Docket No. 7), to which the plaintiffs have filed a Response in opposition (Docket No. 9). For the reasons stated herein, the Motion to Dismiss will be denied.

## BACKGROUND[1]

### I. The Mortgage, Related Bankruptcy Court Proceedings, and the Amended Note

#### A. Mortgage and Bankruptcy Proceedings

The plaintiffs are Tennessee citizens who have owned an alpaca farm in Williamson County, Tennessee (the "Property"), since 2005. When the plaintiffs originally purchased the

---

[1] In their Complaint, the plaintiffs referenced and attached certain pleadings filed in a bankruptcy case in the Bankruptcy Court for the Middle District of Tennessee, *In Re: Charlotte Goldston*, Case No. 3:06-bk-07361. The substance and effect of certain filings in that case are expressly at issue here. In support of its Response, SunTrust has filed additional notices and orders that were docketed in *In Re Goldston*, to which the plaintiffs have asserted no objection. The court takes judicial notice of these public filings and the associated docket, which are appropriately considered at the motion to dismiss stage. *See Winget v. JP Morgan Chase, Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). Accordingly, unless otherwise noted, the facts are drawn from the plaintiffs' Complaint (Docket No. 1, Ex. 1) and the *In Re Goldston* docket.

1

Property, they executed a promissory note in favor of SunTrust for an original principal amount of $1,878,000, which was secured by a mortgage on the property. On December 9, 2006 (just one year later), plaintiff Charlotte Goldston ("Ms. Goldston") filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code, *In Re: Charlotte Goldston* ("bankruptcy case").

As a creditor of Ms. Goldston, SunTrust participated in the bankruptcy case proceedings. On May 29, 2007, Ms. Goldston filed a proposed plan of reorganization. (Bankr. Case Docket No. 47, Attachment 1 ("5/29/07 Proposed Final Plan").) Among other claims, the 5/29/07 Proposed Final Plan addressed SunTrust's secured claim relating to the Property. (*Id.* § 5.08.) In relevant part, § 5.08 of the 5/29/07 Proposed Final Plan estimated the secured claim to be worth $260,000, specified that the parties would execute a promissory note with respect to that claim in substantially the same form as an attached exhibit, fixed the promissory note at the same amount as SunTrust's secured claim, and provided that the secured claim would be amortized over a 25-year period at 8% interest per annum.

On June 25, 2007, SunTrust filed an objection to the 5/29/07 Proposed Final Plan. (Bankr. Case Docket No. 54.) On July 18, 2007, Ms. Goldston and SunTrust entered into an Agreed Order resolving SunTrust's objection. (Bankr. Case Docket No. 61, Agreed Order Resolving Objection to Confirmation of Plan.) In relevant part, the Agreed Order contained substantial changes to § 5.08 of the 5/29/07 Proposed Final Plan as it related to SunTrust's secured claim related to the Property. In particular, SunTrust and Ms. Goldston agreed to an additional term:

> On or before the Effective Date, the Debtor shall execute and deliver to SunTrust Mortgage a promissory note in substantially the same form as Exhibit D, attached

2

> hereto and incorporated herein by this reference. The principal amount of the note shall be equal to the amount of the Allowed Secured Claim of SunTrust Mortgage. The Allowed Secured Claim of SunTrust Mortgage (including all interest and attorney fees accrued as of the Confirmation Date) estimated by the Debtor at $1,937,657.96 through May 31, 2007 shall be amortized over a twenty-five (25) year period with interest at LIBOR (adjusted every three months). The estimated amount does not include attorney fees. *On the fourth (4th) anniversary of the Effective Date, the entire outstanding balance shall become due and payable*.

(*Id.* at p. 3) (emphasis added). Thus, pursuant to the Agreed Order, the parties agreed that the entire balance of SunTrust's claim would become due four years from the effective date of the final plan.

On July 24, 2007, the Bankruptcy Court held a hearing, at which counsel for Ms. Goldston agreed to file the final plan. (Bankr. Case Docket 7/24/07 Entry.) On that same date, counsel for Ms. Goldston accordingly filed a "First Amended and Restated Chapter 11 Plan of Reorganization Dated: July 10, 2007." (Bankr. Case Docket No. 67.) Notably, this document was dated July 10, 2007 – eight days *before* SunTrust and Ms. Goldston had submitted the Agreed Order. Even more importantly, the First Amended and Restated Chapter 11 Plan of Reorganization Dated: July 10, 2007 contained language in § 5.08 that was *substantially different* from the terms of the Agreed Order as concerned the Property. Specifically, in place of the sentence in the Agreed Order specifying that the entire balance "shall become due and payable" four years from the effective date, the plan filed with Bankruptcy Court stated as follows:

> *At the sole option of SunTrust Mortgage*, on the fourth (4th) anniversary of the Effective Date, the entire outstanding balance *may* become due and payable upon thirty (30) days advance notice to the Debtor.

(*Id.* at § 5.08.) This plan also contained a term obligating SunTrust to provide the requisite notice in writing to Ms. Goldston. (*Id.* at § 10.05 ("Any notice hereunder shall be in writing . . . .")) Thus, unlike the Agreed Order, this version of the plan gave SunTrust an *option* to demand a

3

balloon payment of Ms. Goldston's debt four years from the effective date of the plan, provided that SunTrust gave 30 days advance written notice to Ms. Goldston of its intent to do so. On July 25, 2007, the Bankruptcy Court entered an Order confirming this version of the final Chapter 11 plan. (Bankr. Case Docket No. 69.) Thus, the court will hereinafter refer to this plan – *i.e.*, the version containing the optional balloon payment term and associated notice requirements – as the "Final Plan."

It does not appear that SunTrust or Ms. Goldston ever brought to the attention of the Bankruptcy Court the apparent discrepancy between § 5.08 of the earlier-filed Agreed Order and § 5.08 of the later-filed – and confirmed – Final Plan.[2] Neither SunTrust nor Ms. Goldston moved to modify or revoke the Final Plan, nor did they file an appeal.

B.      **The Amended Promissory Note**

On November 15, 2007 (approximately four months after the Bankruptcy Court confirmed the Final Plan), the plaintiffs executed an amended promissory note in favor of SunTrust for $1,962,434.33 ("Amended Note"), the exact amount of SunTrust's claim in the bankruptcy case.[3] (Compl., Ex. 4.) The Amended Note stated as follows:

> This Note shall mature on September 15, 2011 (the "Maturity Date"). This Note is being executed in accordance and consistent with the terms and conditions of that certain Plan of Reorganization and Confirmation Order entered in the Chapter 11 Bankruptcy Case for Charlotte Coles Goldston, case number 306-07361, pending in the United States Bankruptcy Court for the Middle District of

---

[2]Indeed, the plaintiffs allege that, at the time the plan was confirmed, SunTrust acknowledged that it retained an *option* to demand full payment after four years, but would not do so if the plaintiffs timely made all of their monthly payments for the next four years. (*See* Compl. ¶ 15.)

[3]Ms. Goldston's Chapter 11 plan involved other distinct claims by SunTrust that are not at issue here. For the sake of simplicity, the court will refer only to the claim related to the Property.

4

>Tennessee (the "Bankruptcy Case").

>The Note shall bear interest at the initial LIBOR rate of 5.36939%, as determined at the time of confirmation of the Bankruptcy Case. The Indebtedness shall be amortized over a period of twenty-five (25) years, subject to the Maturity Date.

The Amended Note made no reference to the four-year anniversary balloon payment option set forth in the Final Plan.

Significantly, the Amended Note provided that, "[i]n the event that there are inconsistent terms between the Deed of Trust and the confirmed plan of reorganization, *the terms of the confirmed plan of reorganization shall control*." (*Id.* at p. 3 (emphasis added)). The plaintiffs signed the Amended Note, which their counsel of record in the bankruptcy case notarized.

## II. Facts Relating to Collection of Mortgage Payments and the Balance on the Note

Between July 25, 2007 (the date of confirmation of the Bankruptcy Plan ) and August 5, 2011, which the plaintiffs allege is the fourth anniversary of the effective date of the plan, the plaintiffs timely made all monthly installment payments to SunTrust.

On the fourth anniversary date, SunTrust did not inform the plaintiffs of any intention to demand payment of the full indebtedness. Instead, in August 2011, September 2011, and October 2011, SunTrust continued to send monthly mortgage bills to the plaintiffs, demanding – as had been the case since the Final Plan was confirmed – only the monthly principal and associated interest payments. The plaintiffs timely paid each of these bills.

However, on or about November 17, 2011, SunTrust sent the plaintiffs a notice stating that the Amended Note had matured on September 15, 2011, with respect to which SunTrust demanded payment of the full balance within 30 days, after which SunTrust would initiate foreclosure proceedings. Unbeknownst to the plaintiffs, SunTrust in October and November

5

2011 had also furnished information to credit reporting agencies showing that the plaintiffs (purportedly) had failed to make full payments under the Amended Note, notwithstanding the fact that SunTrust had continued to send monthly bills that the plaintiffs had continued to pay in a timely fashion. These reports and subsequent similar reports by SunTrust damaged the plaintiffs' credit rating and their associated ability to obtain alternative financing.

After receiving the default notice, the plaintiffs engaged in repeated attempts to address the issue with SunTrust, in the hope of preventing foreclosure and negotiating the dispute. These attempt were fruitless: SunTrust representatives essentially gave plaintiffs the "run-around," thereby denying the plaintiffs the opportunity to engage in meaningful negotiations.

### III. Procedural History

On July 10, 2012, the plaintiffs filed an action in Tennessee Chancery Court against SunTrust, asserting claims for Declaratory Judgment and Injunctive Relief (Count I), Equitable Estoppel (Count II), Breach of the Covenant of Good Faith and Fair Dealing (Count III), Libel (Count IV), False Light (Count V), and Tortious Interference with Prospective Business Relations (Count VI). SunTrust removed the case to this court on August 3, 2012, on the basis of diversity.

The plaintiffs demand, *inter alia*, a declaratory judgment that plaintiffs can satisfy their Amended Note obligations by making monthly payments for the remainder of the 25-year amortization period, a temporary injunction prohibiting SunTrust from foreclosing on the Property, compensatory damages, and punitive damages.

In support of its Motion to Dismiss the Complaint, SunTrust argues that (1) all of the claims should be dismissed because the Amended Note required the plaintiffs to pay the full

6

balance on the note on September 15, 2011, but the plaintiffs failed to do so; and/or (2) regardless of the court's findings with respect to the plaintiffs' payment obligations under the Amended Note, the plaintiffs have failed to state claims with respect to Counts II-VI.[4]

## ANALYSIS

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of

---

[4]SunTrust also filed a Motion for Summary Judgment (Docket No. 10), in support of which it filed an affidavit from Joseph P. Rusnak (Docket No. 11) – Ms. Goldston's counsel in the bankruptcy case – and a Statement of Undisputed Material Facts (Docket No. 12). The plaintiffs filed a Motion to Strike the Motion for Summary Judgment (Docket No. 13). The court denied the Motion to Strike, but stayed any response to the Motion for Summary Judgment until further order of the court. (Docket No. 15.)

discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

### I. The Operative Bankruptcy Court Order

#### A. The Agreed Order Compared to the Final Plan: An Apparent Mistake

This case involves a peculiar set of circumstances that appear to reflect an error by the Bankruptcy Court and by the parties' respective counsel in the bankruptcy case. With respect to the instant motion – and notwithstanding the plaintiffs' heated rhetoric – it appears to the court that both parties have provided this court with only "half the story."

The July 18, 2007 Agreed Order, the Final Plan that was entered on July 25, 2007, and the November 15, 2007 Amended Note are not consistent. The Final Plan provided that SunTrust could *elect* to collect the full balance on its claim, subject to specific notice requirements. By contrast, the earlier-dated Agreed Order and the later-dated Promissory Note required full payment of the balance on or about the four-year anniversary of the Final Plan, without qualification.

It appears to this court that, as indicated in the July 18, 2007 Agreed Order – of which the Complaint makes no mention – the parties specifically amended the original proposed reorganization plan to include a *mandatory* balloon payment provision.[5] Nevertheless, perhaps

---

[5]If the July 10, 2007 date on the Final Plan in fact reflects a version that the parties had considered before filing the Agreed Order, it may be that the parties originally considered an optional provision but ultimately agreed to a mandatory one.

8

through inadvertence by Ms. Goldston's counsel, the Bankruptcy Court confirmed and entered a Final Plan of reorganization that included an *optional* balloon provision with associated notice requirements. No one brought this apparent inconsistency to the attention of the Bankruptcy Court, even though it would have been (at least) in SunTrust's interest to do so.[6]

SunTrust, without explaining why, states that the absence of any reference to the Agreed Order in the Final Plan is "of no consequence." (Docket No. 8, Def. Mem. at p. 8 n.2.) To the contrary, the absence of any reference in the Final Plan to that Agreed Order is significant, particularly where the Final Plan contains, in relevant part, materially different terms than those set forth in the Agreed Order. Under 11 U.S.C. § 1141(a), "the provisions of a *confirmed plan* bind the debtor . . . and any creditor, . . . whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a) (2012) (emphasis added). Here, the Final Plan is the only plan confirmed by the Bankruptcy Court. Therefore, the terms of the Final Plan – not the Agreed Order – bind SunTrust. SunTrust has not identified any legal authority supporting an exception to 11 U.S.C. § 1141(a) here.

When a bankruptcy court issues an injunctive order, affected parties "are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *See Pratt v. Ventas*, 365 F.3d 514, 520 (6th Cir. 2004) (emphasis added) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 306, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)). Here, it is apparent from the record that SunTrust never sought any relief from the Bankruptcy Court to modify the Final Plan, nor did it take a direct appeal to this court pursuant to 28 U.S.C. § 158(a)

---

[6]Viewed in this context, the plaintiffs' suggestion that SunTrust's alleged actions in seeking to enforce the express terms of the Amended Note necessarily reflected some form of "duplicity" or "subterfuge" – rather than mere inadvertence or negligence – may be overstated.

9

(2012).[7] Thus, the Final Plan has bound SunTrust since it was entered – in the form in which it was entered – even if SunTrust believed that it included different terms. *See* § 1141(a); *Ventas*, 365 F.3d at 520. To the extent that SunTrust seeks to have this court retroactively modify the terms of the Final Plan, the collateral attack doctrine bars this court from doing so in this case. *See Ventas*, 365 F.3d at 519-20.

II. **The Parties' Obligations Under the Amended Note**

The Amended Note expressly states that, to the extent its terms conflict with those of the Final Plan, the Final Plan controls. The Amended Note states that it matures on September 15, 2011, without any qualification. However, the Final Plan states that SunTrust retained an *option* to demand the full balance of payment four years after the effective date of the Final Plan, a right that SunTrust could only exercise upon 30 days' written notice to Ms. Goldston. These terms conflict, because the Amended Note terms, if enforced, would negate SunTrust's obligation

---

[7]For example, if § 5.08 of the Final Plan indeed contained the wrong terms, it appears that SunTrust could have petitioned the Bankruptcy Court for relief under Fed. R. Bankr. P. 9024 – which, via incorporation of Fed. R. Civ. P. 60, permits a bankruptcy court to amend an order because of "mistake, inadvertence, . . . or excusable neglect" – but did not do so.

In their Memorandum in support of their Motion to Strike the Motion for Summary Judgment (Docket No. 13, Ex. 1), the plaintiffs suggest that, pursuant to 11 U.S.C. § 1144 (2012), SunTrust (1) had only 180 days to address this issue with the Bankruptcy Court, rather than the default period of one year set forth in Fed. R. Civ. P. 60, and (2) could have obtained relief only upon a showing of fraud. Although the court has already denied the Motion to Strike, the court notes that these aspects of the plaintiffs' interpretation of Fed. R. Civ. P. 9024 stated therein appear to be incorrect. The 180-day limitation in §1144 applies to "revocation" of a Final Plan, not modification. Even *In re Fesq.*, a case on which the plaintiffs rely, acknowledges that, "[a]lthough Rule 60(b) cannot be used as a vehicle for *revoking* [orders confirming a plan] for reasons other than fraud, it may still be used to correct some other problems that arise with such orders[,]" including "clerical mistakes." 153 F.3d 113, 117 n.6 (3d Cir. 1998) (emphasis added). At any rate, the operative point here is that SunTrust could have sought relief from the Bankruptcy Court but did not do so.

10

under the Final Plan to notify Ms. Goldston of any intention to elect for a balloon payment. Thus, where there is a conflict, the terms of the Final Plan must control.

Therefore, under the express terms of the Final Plan, SunTrust retained an option to elect for a balloon payment of Ms. Goldston's debt related to the Property, provided that it complied with the notice requirements. However, at least according to the Complaint, SunTrust never exercised this option in compliance with the Final Plan's notice provisions.

SunTrust argues that all of the plaintiffs' claims should be dismissed because (1) the Amended Note gave it the right to demand full payment on September 15, 2011, without regard to the notice provisions in the Final Plan, and (2) the plaintiffs' failure to pay justified declaring default and reporting that default to credit reporting agencies. The court has already rejected SunTrust's premise that the terms of the Agreed Order trump § 5.08 of the Final Plan, for the reasons stated in this section. Therefore, the terms of the Amended Note do not defeat the plaintiffs' claims as alleged and will not be dismissed on that basis.

### III. Challenges to Specific Claims

In addition to SunTrust's general challenge to the plaintiffs' claims, which the court has rejected for the reasons discussed in the previous section, SunTrust also asserts specific challenges to Counts II (Equitable Estoppel), III (Breach of Covenant of Good Faith and Fair Dealing), IV (Libel), V (False Light) and VI (Tortious Interference).[8]

#### A. Equitable Estoppel

---

[8]SunTrust appears to concede that, if the court rejects their overarching defense premised on the terms of the Amended Note, the plaintiffs' request for declaratory and injunctive relief (Count I) would survive. The challenges to Counts IV, V, and VI are also derivative of this overarching defense (*see* Docket No. 8 at pp. 10-11) and, therefore, are rejected.

To establish a claim for equitable estoppel, plaintiffs must make showings both as to themselves and as to the party against whom estoppel is being asserted. With respect to the party against whom estoppel is asserted, the plaintiffs must show:

(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;

(2) intention, or at least expectation that such conduct shall be acted upon by the other party; and

(3) knowledge, actual or constructive, of the real facts.

*Osborne v. Mutual Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004). With respect to the party asserting the estoppel, the plaintiffs must show:

(1) lack of knowledge and of means of knowledge of the truth as to the facts in question;

(2) reliance upon the conduct of the party estopped; and

(3) action based thereon of such character as to change his position prejudicially.

*Id.* Here, SunTrust argues that plaintiffs have not alleged (1) a relevant "lack of knowledge" and (2) that they relied on SunTrust's actions to their detriment.

In the Complaint, the plaintiffs allege that SunTrust falsely represented that the entire balance was due, improperly demanded a balloon payment without providing the required notice, unjustifiably provided negative information about the plaintiffs to credit reporting agencies, and refused to negotiate with the plaintiffs in good faith to resolve the dispute. With respect to the plaintiffs' own knowledge, the Complaint expressly states that, as of the purported maturity date of the Promissory Note of September 15, 2011, the plaintiffs were unaware of SunTrust's
12

intention to demand full payment (on pain of default) or of SunTrust's unjustified furnishing of negative information to the credit reporting agencies. (*See, e.g.*, Compl. ¶ 35 ("*Unbeknownst to Plaintiffs*, SunTrust had provided no notice of intent to accelerate and had indicated through counsel that financing would continue beyond the 4th anniversary of the Effective Date.") (emphasis added)) The plaintiffs also allege that, after being made to believe that SunTrust did not intend to default them – due to the monthly installment bills sent by SunTrust in August, September, and October 2011 – they did not arrange for any form of alternative additional financing to cover the full balance on the note to prevent potential foreclosure, default, and a damaged credit record. Accordingly, the plaintiffs have stated a claim for equitable estoppel.[9]

### B.  Breach of Good Faith and Fair Dealing

Every contract imposes upon the parties a duty of good faith and fair dealing in the performance and interpretation of the contract. *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004) (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)). This duty requires a contracting party to do nothing that will have the effect of impairing or destroying the rights of the other party to receive the benefits of the contract. *Id.* at 85 (citing *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995)); Rest. 2d Contracts § 205 cmt. d (2012) ("Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified."). Furthermore, where a

---

[9]Given the court's findings regarding the legal obligations of the parties under the Final Plan, the equitable estoppel claim may be moot if SunTrust in fact violated the notice provision terms. That is, if SunTrust improperly sought to collect on the debt in the first place after waiving its optional balloon payment right under the Final Plan, an estoppel theory of liability might not even be necessary. At any rate, this is a matter that can be addressed at the summary judgment stage, based on a complete record.

creditor wishes to exercise a right to full payment or to declare a default, it must do so "in a clear manner." *Overholt v. Merchants & Planters Bank*, 637 S.W.2d 463, 467 (Tenn. Ct. App. 1982).

SunTrust construes the plaintiffs as alleging breach of good faith claims premised exclusively on SunTrust's failure to re-negotiate the Amended Plan. Based on that construction, SunTrust argues that the plaintiffs cannot make out claims premised on the failure to re-negotiate. SunTrust relies on cases establishing that, in the absence of a binding contractual agreement, a party may not be subject to a claim for the breach of the implied covenant of good faith and fair dealing. *See, e.g.*, *Barnes & Robinson Co. v. Onesource Facility Servs., Inc.*, 195 S.W.3d 637 (Tenn. Ct. App. 2006); *Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12 (Tenn. Ct. App. 1997).

However, unlike the circumstances in the cases relied upon by SunTrust, the parties here are bound by a contract: the Amended Note, the execution of which carries with it an implied covenant of good faith and fair dealing. Furthermore, SunTrust has construed the plaintiffs' allegations too narrowly: the plaintiffs allege that, regardless of SunTrust's legal obligations, it failed to timely communicate a clear intention to demand full payment and/or declare a default, creating the misleading impressions described in the previous section. When the plaintiffs sought to engage in meaningful discussions to resolve the contractual dispute – in order to save their property from foreclosure and to restore their credit rating – SunTrust resisted those efforts. Moreover, as the court has construed the Amended Note, the terms of § 5.08 of the Final Plan have always controlled, in any case. Thus, the Amended Note effectively incorporated the four-year balloon payment option term and associated notice requirement, which SunTrust appears to have violated.

Under these circumstances, the plaintiffs have articulated a plausible claim that SunTrust

acted in bad faith in violation of the parties' contractual obligations.[10]

## **CONCLUSION**

For the reasons set forth herein, the Motion to Dismiss will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[10]Of course, whether SunTrust actually acted in bad faith is a question of fact that will be resolved at a later stage, based on a developed factual record. *See Old Republic Sur. Co. v. Eshaghpour*, No. M1990-01919-COA-R3-CV, 2001 WL 1523364, at *7-*8 (Tenn. Ct. App. Nov. 30, 2001).